LUCÍA BABILONIA, Appellant, *v.* REGISTRAR OF PROPERTY OF AGUADILLA, Respondent.

No. 1127.  Submitted November 1, 1943.—Decided December 10, 1943.

*García Méndez & García Méndez* for appellant.  The registrar appeared by brief.

MR. JUSTICE SNYDER delivered the opinion of the court.

In 1938 the petitioner bought three farms by a deed which recited that she was a married lady domiciled in Aguadilla.  This deed was registered "with the curable defect that it had not been established in any manner that the money invested in said purchase belonged exclusively to the purchaser."

In 1943 the petitioner requested that this defect be cured by the registrar.  The basis of this request was that the petitioner was married in 1926 in New York, where she and her husband were domiciled at that time; that the laws of New York therefore govern the rights of her husband in real property subsequently acquired by her in Puerto Rico; that the system of community property does not exist in New York; and therefore that the real property involved herein is her separate property.

In support of her petition, Lucía Babilonia filed affidavits by herself and by her father that in 1926 she had left Puerto Rico and had gone to New York, where she became domiciled; that while thus domiciled in New York, she had married Antonio Mas, who had been domiciled in New York for a number of years prior to their marriage; that she and her husband maintained their domicile in New York until 1929, when "owing to difficult economic circumstances [they] moved temporarily to Aguadilla where [they] lived for some time until [her] husband on December 4, 1935 abandoned [her] and went to New York, establishing at that time his residence in New York and keeping his domicile there."

The petitioner also furnished the registrar with a duly authenticated document reciting that in 1926 in New York a clerk of court did "solemnize the rites of matrimony between Antonio Mas of New York . . . and Lucía A. Babilonia of New York . . .".

The registrar refused to cure the said defect on the ground that "in spite of the fact that the marriage was celebrated in New York, the two accompanying affidavits are not sufficient to establish the fact that Doña Lucía Babilonia and Don Antonio Mas were domiciled in and were citizens of the state of New York, for the purpose of the personal statute, it appearing as it does from the very deed of purchase of these farms that on the date of its execution Doña Lucía Babilonia was domiciled in the city of Aguadilla, Puerto Rico . . .". The petitioner has appealed from that ruling of the registrar.

The petitioner contends that her case falls under the doctrine laid down in *Bartholomew* v. *Allen et al.*, 24 P.R.R. 347, and *Cothran* v. *Registrar of Arecibo*, 25 P.R.R. 602.

The marriage herein was not contracted under the community property system, inasmuch as that marital property rule does not obtain in New York. Nevertheless, as to immovable property acquired after marriage, there is no

doubt that the real statute, and not the personal statute, governs. This has always been elementary, both in civil and in common law jurisdiction.[1] "The statutes of France and Spain regulating the property rights of husband and wife were real, not personal, statutes. They operated on things and not persons and applied to all acquisitions made in those countries by married persons, whether resident or nonresident therein." (*Hammonds* v. *Commissioner of. Internal Revenue*, 106 F. (2d) 420, 423 (C.C.A., 10th Circ., 1939)). See *Commissioner of Internal Revenue* v. *Skaggs*, 122 F. (2d) 721, 23.

In commenting on §§9 to 11 of the Spanish Code, Manresa states that all real property, by reason of its being a part of the territory of the state, or because it is intimately linked thereto, and because of the conflicts that would arise if it were controlled by diverse laws, is governed by the real statute. He cites the following doctrine established by the Supreme Court of Spain:

"If this were different, it would be easy for a nation to encroach upon other nations in the enjoyment of such a high and sacred right as the right of dominion, which is exercised absolutely over their territories." Judgment of October 23, 1873, 1 Manresa 100.

It seems desirable to transcribe what Manresa has said with reference to issues of conflict of laws which arise in relation to real property. He says:

"The authorities on private international law raise an important issue concerning the form in which real rights are constituted. If the freedom of the parties in constituting them is recognized, few limitations having been imposed upon them, for what reason, they say, are they precluded from substituting their personal law for the real statute, even when real property is involved? We understand the answer to be negative, for the simple reason that this is one of many restrictions imposed upon the freedom to contract, and which,.

---

[1] 1 Manresa 100–2; Leflar, Community Property and Conflict of Laws, 21 Calif. L. Rev. 221, 24, 30 (1933); Restatement, Conflict of Laws, §237–8; 2 Beale, The Conflict of Laws, p. 952.

because it affects its sovereignty, the state does not surrender. It was thus understood by the Supreme Court when, in its judgment of January 21, 1874, it declared that 'The efficacy of the contracts or acts which directly affect real property is determined by the real statute'; . . . ''. 1 Manresa 102.

Section 10 of the Civil Code settles the matter for us. It provides that ''Personal property is subject to the laws of the nation of the owner thereof; real property to the laws of the country in which it is situated.''

The petitioner contends that marriage in New York, when coupled with domicile in that state at the time of marriage, should give rise to a rule of law that the marital rights of the respective spouses to real property acquired by one of them in Puerto Rico should be governed for the duration of the marriage by the laws of New York. Apart from the fact that §10 of our Code leads to a contrary result, the facts of the instant case furnish a graphic example of the dangers inherent in the rule urged on us by the petitioner. Here we have a native of Puerto Rico who was away from the Island for only three years, from 1926 to 1929. Yet because she married in New York in 1926 and remained domiciled there for three years, the effort is made in this case to attach to real property located in Puerto Rico and acquired by her in 1938, nine years after she had resumed her domicile in Puerto Rico, the New York rather than the Puerto Rican rule of law on real estate acquired by a wife during coverture. The frail reed of marriage in New York plus temporary domicile in New York is not sufficient to support such a drastic departure from our rule of local property law. (See Marital Property Rights and the Conflict of Laws, 43 Harv. L. Rev. 1286).

This court held in the *Bartholomew* and *Cothran* cases, *supra,* and in *Antongiorgi* v. *Registrar,* 6 P.R.R. 238, that celebration of a marriage in New York is in itself sufficient to make applicable to real property acquired in Puerto Rico

after marriage the marital property rule of New York rather than the community property rule of Puerto Rico. Those cases were mistakenly decided and are expressly overruled.

The petitioner and her husband were domiciled in Puerto Rico and not in New York at the time the property in question was acquired in Puerto Rico. The question of whether domicile in New York at the time of acquisiton would operate to attach to the property in question the marital property rule of that state rather than our own community property rule is therefore not expressly involved in this case. But in view of the fact that the real statute governs, we can see no effect that domicile could have on the question involved herein, except for the purpose to be presently noted.

The petitioner has a right to establish that the money with which she purchased the real property in question was acquired by her while she was domiciled in New York. Under those circumstances, the law of her then domicile would attach to that money as her separate property, and the real property acquired by her in Puerto Rico with the said money would be her separate property. "The general rule in the community property states that marital rights in lands, regardless of the residence of the husband and wife, are regulated by the law of the situs is subject to the qualification that where property is acquired in a community property state, through purchase by funds which are the separate property of one of the spouses, or in exchange for separate property of one of the spouses, the character of the funds or of the property given in exchange is transmitted to the property acquired. Separate property remains separate through all its mutations and changes so long as it can be clearly and indisputably traced and identified." (*Hammonds* v. *Commissioner of Internal Revenue, supra,* p. 424). See Annotation, Change of domicile as affecting character of property previously acquired as separate or community property, 92 A.L.R. 1347; 29 L.R.A. (N. S.) 781.

Although we have overruled the holding in the *Bartholomew* case, the statement therein that the husband is the sole owner of the properties in question if he purchased them with his own money is well-taken under the "source" doctrine which we have just noted.

Without such proof as above noted of the separate character of the money with which this real property was acquired, §§1301 and 1307 of the Civil Code[2] apply to the facts herein.

The ruling of the registrar will be affirmed.

(*)Sections 1301 and 1307 of the Civil Code read in part as follows:

"Section 1301.—To the conjugal partnership belong:

"1. Property acquired for a valuable consideration during the marriage at the expense of the partnership property, whether the acquisition is made for the partnership *or for one of the spouses only.*

"* * * * * * *

(Italics ours).

"Section 1307.—All the property of the marriage shall be considered as partnership property until it is proven that it belongs exclusively to the husband or to the wife."